UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH J. FRANK,

                              Plaintiff,                    **MEMORANDUM & ORDER**
  -against-                                                     09 CV 955  (DRH) (WDW)

WALGREENS CO.,

                              Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**JOSEPH C. STROBLE, ESQ.**
Attorney for Plaintiff
40 Main Street
P.O. Box 596
Sayville, New York 11782

**LITTLER MENDELSON P.C.**
Attorneys for Defendant
900 Third Avenue
New York, New York 10022
By:    Eric D. Witkin, Esq.
          Joel L. Finger, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Joseph J. Frank commenced this diversity action alleging that his employer, defendant Walgreens Co., retaliated against him because of a complaint he filed with the New York Department of Education in violation of New York Labor Law Section 740, New York State's "Whistleblower Statute."  Plaintiff has also asserted causes of action for negligent hiring and supervision, intentional infliction of emotional distress, and prima facie tort.  Presently before the Court is defendant's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal of the Complaint.  For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

*Commencement of the Suit*

Plaintiff originally filed this action in New York State Supreme Court, Suffolk County by filing a Summons with Notice on January 28, 2009. Because the Summons with Notice alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq., and the Occupational Safety and Health Act, 29 U.S.C. § 651, et seq, defendant removed the case to this Court based on federal question jurisdiction. Plaintiff filed the Complaint on March 29, 2009. The Complaint asserts state law claims only, and explicitly states: "All of plaintiff[']s claims are state claims. There are no federal claims." (Compl. ¶ 2.) The Court denied plaintiff's subsequent motion to remand, however, finding that the Court had diversity jurisdiction over the action. (Mem. & Order, dated Aug. 4, 2010 at 8.)

*Factual Background*

The following facts are taken from the Complaint, including the exhibits attached thereto,[1] and are presumed true for purposes of the instant motion.

Plaintiff, a resident of Suffolk County, New York, has been, at all relevant times, employed by defendant as a Senior Certified Pharmacy Technician in defendant's Store No. 2216, located in Patchogue, New York. (Compl. ¶ 5 & Ex. F.) Defendant is a "foreign corporation authorized to do business in the State of New York." (Compl. ¶ 6.) On December 3,

---

[1] The Court may properly rely on material attached to the Complaint when deciding the instant motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Pleadings," for purposes of a motion to dismiss under Rule 12(b)(6) "include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation marks omitted).

2008, plaintiff had a "first meeting" with Maurice Ward, the Loss Prevention Supervisor for defendant's Districts 291 and 236, as well as Louis Morandi, the Pharmacy Supervisor for District 236. (*Id.* ¶ 8c & Ex. B.) Morandi was not plaintiff's direct supervisor, but was a supervisor on the District level. (Compl. ¶ 10.) The December 3, 2008 meeting revolved around plaintiff's interactions with Craig Schmidt, the Pharmacy Manager and plaintiff's direct supervisor (*id.* ¶ 10 & Ex. A), as well as Krista Wolfe, plaintiff's co-worker in the pharmacy department (Compl., Ex. F). The Complaint describes the discussion during the meeting as follows:

> At this point all I knew was that I was being accused of creating a hostile work environment. It was at this point that I said I was being harassed because Craig Schmidt and Krista Wolfe were seeing each other and [I] had proof to support this claim.

(*Id.* ¶ 8c.)

On December 18, 2008, plaintiff submitted a complaint against Schmidt to the New York State Department of Education's Office of Professional Discipline (the "Administrative Complaint"). (Compl., Ex. A.) The Administrative Complaint sets forth plaintiff's complaining information:

> It's an ongoing problem not limited to just one occasion. Craig Schmidt the Pharmacy Manager brings his girlfriend[']s son into the pharmacy. He is allowed to play with the vials and pill bottles. Also during business hours he wears the Pharmacy Manager[']s labcoat with name tag. Several customers have complained to me saying its unprofessional that he is back there where we store the medication. [T]hey also believe our attention should be on filling medications without making a mistake instead of being distracted by the child. Not only that but it poses a safety hazard. He cannot watch the child on a [consistent] basis and do his job effectively. Not all medications are in [ ] child resistant bottles and what would happen if he got into a bottle? As a pharmacist Craig should know better than anyone the

3

result.

(*Id.*)

On December 22, 2008, plaintiff attended a "second meeting" with Ward and Morandi. (Compl. ¶ 8c.) Plaintiff was informed that Schmidt was being transferred to a different store "because of his relationship with Krista." (*Id.*) "Midway through" this meeting, plaintiff informed Ward and Morandi "about the claim [plaintiff] filed with New York State, which they weren't happy about." (*Id.*) Plaintiff also informed Ward and Morandi that he had made copies of photographs that "were left in the pharmacy," which depicted the child in the medication storage area of the pharmacy. (*Id.*) Those photographs were apparently submitted to the State Department of Education as part of plaintiff's Administrative Complaint. (*See* Compl., Ex. A.)

On December 23, 2008, plaintiff and Marvin Boyer, who is described as a Loss Prevention Manager for defendant's Region 16 (*see* Compl., Ex. B), had a telephone conversation regarding the manner in which plaintiff had "been treated over the past year or so since [Schmidt] took over as Pharmacy Manager in Patchogue." (Compl. ¶ 8c.) The following day, plaintiff and Boyer spoke again, and the focus of the conversation "start[ed] to shift to the claim [plaintiff] filed about children being allowed in the pharmacy." (*Id.*) "At [that] point," plaintiff believed that "everyone [knew]" about the Administrative Complaint. (*Id.*)

On December 30, 2008, Morandi informed plaintiff that he was being transferred to the Smithtown store. (*Id.*) Plaintiff also learned that Schmidt was being transferred to the Medford store, although it was "undecided" as to whether or where Wolfe would be transferred. (*Id.*) That same day, plaintiff sent an email to John Foley (Vice President of Store Operations for Region 16), Morandi, Ward, and Boyer, as well as Debbie Smith (Employee Relations

4

Representative), Adrienne Johnson (District Manager for District 326), and Gene Slade (Senior Attorney). (Compl., Exs. B & F.) In the email, plaintiff expressed that he was "not happy about being transferred to Smithtown," and stated that he believed his transfer was "nothing more than Retaliation." (Compl., Ex. F.) Plaintiff further stated: "I've done nothing wrong, but bring [ ] attention [to] things that were going on in the pharmacy . . . [A]nother thing that is clear now is that I am being retaliated against and odds are [its] because I had called New York State." (*Id.*)

On December 31, 2008, plaintiff spoke with Joseph Moy, a Pharmacy Supervisor for District 291, regarding the December 30, 2008 email. (Compl. ¶ 8c.) Moy informed plaintiff that his transfer to the Smithtown store was only temporary. (*Id.*) The Complaint does not specify whether the transfer was, in fact, temporary.

*The Complaint*

The Complaint contains three causes of action. First, plaintiff asserts that he was retaliated against because of complaints he made to his supervisors as well as the Administrative Complaint he filed with the New York State Department of Education, and that such retaliation violated New York Labor Law Section 740. (Compl. ¶ 20.) Specifically, plaintiff alleges that he was "improperly denied my regular hours, shift assignments, and store location assignments." (*Id.* ¶ 9.) Plaintiff further alleges that he was "harassed by e-mails, wrongful investigative procedures, violations of WALGREEN policy . . ., [and] repeated derogatory, harassing, and insulting verbal comments." (*Id.*)

Plaintiff also asserts causes of action for negligent hiring, supervision and training, intentional infliction of emotional distress, and prima facie tort. Plaintiff seeks compensation for lost wages and benefits, as well as an award for mental anguish, emotional distress, and punitive

5

damages.

## DISCUSSION

### I. *Motion to Dismiss Legal Standard*

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to

dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II. *Plaintiff's New York Labor Law Section 740 Claim is Dismissed*

Section 740 of the New York Labor Law provides, in relevant part that:

> An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:
>
> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud . . . .

N.Y. Lab. L § 740(2)(a). Defendant makes numerous arguments why plaintiff's claim made pursuant to this statutory provision should be dismissed. Because, however, the Court finds that plaintiff has failed to adequately plead certain of the statutory elements of a Section 740 retaliation claim, it need only address these deficiencies.

In order to maintain an action under Section 740, a plaintiff must: "'establish a violation of a law, rule or regulation, which violation must be actual and not merely possible,'" and (2) demonstrate "'that the lack of compliance presents a substantial and specific danger to the public health or safety.'" *See Perez v. Consol. Edison Corp. of N.Y.*, 2006 WL 2707316, at *16 (S.D.N.Y. Sept. 20, 2006) (quoting *Connolly v. Harry Macklowe Real Estate Co., Inc.*, 555 N.Y.S.2d 790, 792 (1st Dep't 1990)). After reviewing the Complaint, the Court concludes that plaintiff has failed to meet either of these requirements.

First, plaintiff fails to allege that defendant's conduct (i.e., permitting a Pharmacy Manager to allow a young child into the pharmacy area of one of its stores) violates any law, rule, or regulation. Plaintiff attached to the Complaint a copy of Part 29 of the New York Department of Education's Rules of the Board of Regents, which is entitled "Unprofessional Conduct." (*See* Compl., Ex. A.) Plaintiff, however, provides no elaboration, either in the Complaint or his legal memorandum, as to how these Rules apply to govern defendant's conduct or which provision of these Rules defendant has allegedly violated. This defect in the pleadings is fatal to plaintiff's Section 740 claim. *See Reyes v. Energy Transp. Corp.*, 1997 WL 256923, at *4 (S.D.N.Y. May 16, 1997) (finding plaintiff's allegation that defendant "violated the Jones Act," without more, did not support a claim under Section 740 because "plaintiff must identify a specific law, rule or regulation, the violation of which he disclosed or threatened to disclose"); *Blumenreich v. N. Shore Health Sys., Inc.*, 731 N.Y.S.2d 638, 639 (2d Dep't 2001) ("The plaintiff failed to plead a violation of any law, rule, or regulation with the requisite particularity and specificity necessary to support [a Section 740] claim."); *Connolly*, 555 N.Y.S.2d at 792 ("Plaintiff herein, by failing to state which law, rule or regulation [defendants] purportedly violated, has not asserted a valid cause of action under section 740 of the Labor Law."); *Contra Rodgers v. Lenox Hill Hosp.*, 626 N.Y.S.2d 137, 140 (1st Dep't 1995) (finding plaintiff adequately alleged Section 740 violation by "cit[ing] with particularity the relevant sections of [the various laws and regulations] which were violated by the specific conduct [alleged]").

Moreover, plaintiff has failed to allege that defendant's allowing a child into the pharmacy area of one of its stores created or presented a "substantial and specific danger to the public health or safety." N.Y. Lab. L. § 740(2)(a). In fact, the Complaint itself does not contain

9

a single allegation on this subject. Plaintiff's statements in the Administrative Complaint, attached to the Complaint as an exhibit, suggest that defendant's conduct: (1) endangered the child, and (2) resulted in customer complaints that allowing a child into the pharmacy area was "unprofessional" and could distract pharmacy staff from their task of filling prescriptions. (*See* Compl., Ex. A.) First, it is clear that any danger posed to the child himself does not constitute a "danger to the public health or safety"; this element of Section 740 "has generally been narrowly construed to apply to the public at large." *Reyes*, 1997 WL 256923 at *4; *see also Tucker v. New York City*, 2007 WL 3051870, at *3 (S.D.N.Y. Oct. 17, 2007) ("The New York courts have consistently and strictly enforced this explicit limitation to the scope of Section 740; indeed, complaints about very serious misconduct, even if that conduct amounts to regulatory or criminal violations, will not trigger statutory protection if the misconduct does not itself pose a direct threat to public health and safety."); *Kern v. DePaul Mental Health Servs., Inc.*, 544 N.Y.S.2d 252, 253 (4th Dep't 1989) (finding plaintiff's Section 740 claim was properly dismissed when defendant's "alleged wrongdoing may have presented a danger to the health or safety of [an] individual patient, but did not threaten the health or safety of the public at large").

Furthermore, the Court finds that the possibility that pharmacy employees might get distracted by the child while filling prescriptions does not create a substantial and specific danger to the public health or safety within the meaning of Section 740. The statute "clearly envisions a certain quantum of dangerous activity before its remedies are implicated." *Peace v. KRNH, Inc.*, 785 N.Y.S.2d 547, 549 (3d Dep't 2004). Thus, any claim that alleged wrongdoing would create a substantial and specific danger to the public health or safety must be based on more than "mere speculation." *Cotrone v. Consol. Edison Co. of N.Y., Inc.*, 856 N.Y.S.2d 48, (1st Dep't 2008)

(finding that although defendant's alleged conduct, namely, two "isolated incidents" of tanker trucks with hazardous materials being left unattended on a public street, violated federal regulations, the plaintiff's claim that such conduct created a substantial and specific danger to the public health and safety was "based on mere speculation," particularly where "these incidents led to no adverse consequences"); *see also Nadkarni v. N. Shore-Long Island Jewish Health Sys.*, 799 N.Y.S.2d 574, 575 (2d Dep't 2005) (dismissing Section 740 claim when the hospital staffing plan plaintiff complained about "was never implemented and the plaintiff's contention that utilizing volunteers could adversely affect patient health and create a substantial and specific danger to the public health or safety was no more than speculation"); *Peace*, 785 N.Y.S.2d at 549 (finding conduct of a respiratory therapist, who allegedly falsely documented results of tests that were never actually performed on a patient, was "simply insufficient to establish the requisite threat the public health and safety," particularly when the patient at issue "suffered no serious adverse consequences from the lack of care").

Here, plaintiff has not alleged that pharmacy employees were ever actually distracted by the presence of the child in the pharmacy, or that any such distraction negatively impacted the accuracy with which they filled prescriptions. Because plaintiff's claim that defendant's conduct created a substantial and specific danger to the public health or safety is based solely on speculation, it cannot sustain a cause of action under Section 740.

Accordingly, that portion of defendant's motion seeking the dismissal of plaintiff's alleged violation of New York Labor Law Section 740 is granted, and the First Cause of Action is dismissed.

## II. Plaintiff's Claim of Negligent Hiring, Supervision, and Training is Dismissed

In his Second Cause of Action, plaintiff alleges that Schmidt, Moy, Morandi, and Clarita Ortega (who is identified in the Complaint as one of plaintiff's supervisors)[2] were "incompetent, of vicious propensities[,] of bad disposition and given to discrimination and harassment." (Compl. ¶ 24.) Plaintiff further alleges that defendant "had knowledge of facts which would have caused a reasonably prudent person to investigate" these employees' "capacity and disposition," and that although defendant "could have reasonably anticipated that [their] incompetence and disposition would be likely to result in injury to others," defendant "failed to use reasonable care to correct or remove said employees." (*Id.* ¶¶ 25, 26.) In addition, plaintiff contends that defendant was "negligent in the hiring, training, supervision, management and control of" its employees, and that defendant was "negligent in the development and enforcement of its policies." (*Id.* ¶ 28.)

Defendant argues that plaintiff's Second Cause of Action is barred by New York's Worker's Compensation Law ("NYWCL"). (Def.'s Mem. at 14.) "The exclusivity provision of the NYWCL provides that an employer's negligence liability under the NYWCL 'shall be exclusive and in place of any other liability.'" *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 66 (E.D.N.Y. 2002) (quoting N.Y. Work. Comp. § 11)). Courts within this Circuit have "consistently interpreted this provision to bar negligence claims brought in federal court by an employee against an employer." *Id.* (dismissing claim for negligent hiring and retention) (collecting cases); *see also Davis v. Columbia Univ.*, 2010 WL 2143665, at *5 (S.D.N.Y. May

---

[2] Schmidt, Ortega, Moy, and Morandi were originally named as defendants in this action. The Complaint was dismissed as against them, by Memorandum & Order dated August 4, 2010, pursuant to Rule 4(m) based upon plaintiff's failure to properly serve them.

26, 2010) (dismissing negligent infliction of emotional distress claim as barred by NYWCL); *Smith-Henze v. Edwin Gould Servs. for Children & Families*, 2008 WL 4937555, at *5 (S.D.N.Y. Nov. 19, 2008) (finding NYWCL's exclusivity provision would bar plaintiff's negligent hiring, retention, and supervision claim).

Accordingly, that portion of defendant's motion seeking dismissal of plaintiff's negligence claims is granted, and the Second Cause of Action is dismissed.

### III.     *Plaintiff's Intentional Infliction of Emotional Distress Claim is Dismissed*

In the Third Cause of Action, plaintiff alleges that defendant's employees "engaged in a continuous pattern of intentional conduct designed to harass and cause plaintiff severe emotional distress, with the expected end result of forcing plaintiff to leave his employment." (Compl. ¶ 35.)

In order to assert a claim for intentional infliction of emotional distress under New York law, a plaintiff must show: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. 2009) (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)) (internal quotation marks omitted).

"Since the alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, satisfying the outrageousness element is difficult, even at the pleadings stage." *Russo-Lubrano v. Brooklyn Fed. Savs. Bank*, 2007 WL 121431, at *6

13

(E.D.N.Y. Jan. 12, 2007) (internal citations and quotation marks omitted). "Particularly in the employment context, New York courts are exceedingly wary of claims for intentional infliction of emotional distress . . . ." *Id.* (internal quotation marks omitted, alteration in the original).

Plaintiff alleges that he was transferred to a different store and assigned fewer work hours in retaliation for his complaints, and that he was harassed via email and with "insulting verbal comments." (Compl. ¶ 9.) Even accepting plaintiff's allegations as true, which the Court is bound to do at this stage of the proceedings, these allegations are insufficient to meet the threshold for extreme and outrageous conduct necessary to sustain claims for intentional and negligent infliction of emotional distress. *See Russo-Lubrano*, 2007 WL 121431 at *7 (collecting cases).

Accordingly, that portion of defendant's motion seeking dismissal of plaintiff's intentional infliction of emotional distress claim is granted, and the Third Cause of Action is dismissed.

### IV.     *Plaintiff's Prima Facie Tort Claim is Dismissed*

In the Fourth Cause of Action, plaintiff asserts a claim of prima facie tort. "A cause of action for a prima facie tort requires a showing of '(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful.'" *Field Day, LLC v. Cnty. of Suffolk*, 2011 WL 2580340, at *13 (E.D.N.Y. June 28, 2011) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984)). "A critical element of a *prima facie* tort is that the plaintiff suffered specific and measurable loss, which requires an allegation of special damages." *Gilani v. Nat'l Assoc. of Secs. Dealers, Inc.*, 1997 WL 473383, at *15 (S.D.N.Y. Aug. 19, 1997) (citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985)).

14

Here, plaintiff has not adequately pled the special damages element of a prima facie tort claim. The Complaint initially asserts that "[a]s a result of the prima facie tort," plaintiff has incurred damages for pain and suffering, emotional distress, and lost wages/benefits in the amount of $5,000, as well as lost future wages in the amount of $100,000. (Compl. ¶ 46.) In the Wherefore clause of the Complaint, however, plaintiff asserts that, with respect to his Fourth Cause of Action he seeks compensatory damages in the amount of "ONE HUNDRED MILLION [ ] DOLLARS" for humiliation, mental anguish, pain and suffering, emotional distress, and other pecuniary losses caused by defendant. The Wherefore clause also contains identical damage claims for each of his first three causes of action. A "general damages claim" for prima facie tort that is identical to claims made for each of plaintiff's other causes of action "is not stated with enough particularity to constitute an adequate pleading of special damages as required under New York law." *Gilani*, 1997 WL 473383 at *15 (collecting cases).

Accordingly, that portion of defendant's motion seeking dismissal of plaintiff's prima facie tort claim is granted, and the Fourth Cause of Action is dismissed.

## CONCLUSION

For the reasons set forth above, defendant's motion is granted and the Complaint is dismissed in its entirety. Plaintiff has not requested leave to amend the Complaint in the event that defendant's motion was granted. To the extent plaintiff wishes to request such leave, plaintiff is directed to submit a pre-motion conference letter within thirty days of the date of this Order. Should plaintiff fail to submit a pre-motion conference letter within thirty days of the date of this Order, his right to do so will be deemed waived, and the case will be marked closed.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 26, 2011

                                           /s/
                                         Denis R. Hurley
                                         United States District Judge